**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ANDRE MILLER,

                Plaintiff,

v.                                   CIVIL ACTION NO.   2:16-cv-05637

COMMISSIONER JIM RUBENSTEIN, et al.,

                Defendants.

**ORDER**

Pending before the Court are motions for summary judgment from Defendants Commissioner Jim Rubenstein ("Defendant Rubenstein") and Warden David Ballard ("Defendant Ballard"), collectively, (ECF No. 90), Officer Christopher Wynegar ("Defendant Wynegar"), (ECF No. 92), and Lieutenant Hobert Allen ("Defendant Allen"), (ECF No. 96).[1]   For the reasons herein, the Court **GRANTS IN PART** and **DENIES IN PART** all three motions.   (ECF No. 90; ECF No. 92; ECF No. 96.)

*I.   BACKGROUND*

Plaintiff Andre Miller ("Miller") is an inmate housed at Mount Olive Correctional Complex ("MOCC").   On the night of June 6, 2015, at approximately 9:00 p.m., the Assistant Shift Commander was informed that Miller was barricaded in his cell in the segregation unit and

---

[1]  Also pending in this case is Defendant, Lieutenant Hobert Allen's ("Defendant Allen"), motion to file exhibits under seal.   (ECF No. 94.)   Subsequent to the filing of that motion, Defendant Allen filed an amended motion to file an exhibit under seal, (ECF No. 105), which this Court granted, (ECF No. 116).   Thus, this Court **DENIES AS MOOT** Defendant Allen's motion to file exhibits under seal.   (ECF No. 94.)

had placed a cover over the window to his cell door. (ECF No. 91 at 1; ECF No. 97 at 2.) Defendant Allen responded to Miller's cell and ordered him to remove the cover from his cell door window. (ECF No. 91 at 1.) Miller refused. (*Id.*) As a result, Defendant Allen obtained permission from Associate Warden Jason Collins to remove Miller from his cell. (*Id.*) Miller disputes that this is the reason Defendant Allen wanted him removed from his cell and instead asserts that Defendant Allen wanted him removed because of a verbal altercation between the two that occurred earlier that day over a telephone, during which Miller cursed at Defendant Allen and called him a name. (ECF No. 112 at 7.)

Miller cooperated with Defendant Allen as he was removed from his cell. (*Id.* at 2.) Once out of his cell, Miller was stripped out of his clothing, placed in handcuffs and leg shackles ("mechanical restraints"), and was taken to the multi-purpose room. (*Id.*) Miller remained in the multi-purpose room while his cell was searched. (ECF No. 97 at 3.) Once correctional officers finished searching his cell, Miller was escorted back to the outside of his cell. (*Id.*) While the mechanical restraints on his legs were being removed, Miller moved into a position that caused him to fall face first onto the concrete floor and hit his head. (*Id.*, ECF No. 96-1 at 7.)

Miller alleges that he immediately requested medical attention for his head. (ECF No. 97 at 4.) Officers ordered Miller inside his cell and commanded him to place his hands through the metal slot so that his handcuffs could be removed. (*Id.*) Throughout this process, Miller continued to request medical attention. (*Id.*) Before leaving Miller in his cell, Defendant Allen requested medical attention for Miller. (ECF No. 93 at 2.)

Approximately twenty minutes later, Miller was removed from his cell and taken to the multi-purpose room to receive medical attention from Nurse Joyce Coleman ("Nurse Coleman").

Nurse Coleman examined Miller and found that he had not suffered an injury and cleared him to be returned to his cell. (*Id.*) Correctional officers thus escorted Miller back to his cell. (*Id.*)

After returning to his cell, Miller pressed a call button and stated that he was having chest pains. (ECF No. 97 at 4.) Correctional officers escorted Miller back to the multi-purpose room where Nurse Coleman administered an EKG. (*Id.*) Miller alleges that when Nurse Coleman left the room after the completion of the EKG, Defendant Allen poked Miller in the chest and stated that if he had to return to the unit to deal with Miller's alleged injury again he was going to "fuck him up." (*Id.*) Miller was then escorted back to his cell. (*Id.*)

During cell count, Miller informed two correctional officers that he was having head pain and requested to be evaluated by a medical professional other than Nurse Coleman. (*Id.*) The correctional officers informed Miller that they could not arrange for him to see another medical professional. (*Id.*) Miller then told the correctional officers to tell Defendant Allen that if he was not seen by a medical professional he might commit suicide. (*Id.* at 5.) The correctional officers relayed Miller's statement to Defendant Allen who obtained permission from Administrative Duty Officer Jason Collins to place Miller in a restraint chair to protect from self-harm. (ECF No. 97 at 5.) Miller, however, disputes that this was the reason he was placed in the restraint chair and instead asserts that Defendant Allen wanted him placed in the chair out of retaliation for requesting medical attention despite being told not to. (*See* ECF No. 109 at 10–12.)

Miller was then taken to the multi-purpose room and placed in a restraint chair. (*Id.*) Nurse Coleman again evaluated Miller and gave Miller pain medication and ice for his head. (*Id.*)

An Intensive Supervision Log was created to document Miller's time in the restraint chair in real

time and showed the following:

> 00:24 Inmate placed in the chair
> 00:35 Inmate arguing with staff
> 00:40 Inmate threatening to "shit staff down2"
> 00:42 Inmate threatening to spit on officers
> 00:44 Inmate threatening to kill CO Wynegar
> 01:30 Inmate threatening to make O.C. and spray Officers
> 02:40 Inmate attempting to loosen restraints
> 02:55 Inmate attempting to get out of restraints
> 03:35 Inmate attempting to loosen restraints
> 05:00 Inmate saying he was gonna beat up the Officers
> 05:20 Inmate acting aggressively towards LPN Coleman
> 05:35 Inmate rocking the restraint chair hollering
> 05:50 Inmate threatening to "shit down" COII Peters and Wynegar
> 06:05 Inmate rambling about Nurse and Officers saying when he gets a chance
> he is going to assault officers and nurses
> 06:22 Inmate attempted to head-but officer
> 06:30 Inmate screaming and yelling

(ECF 90-3 at 3–5.)

Miller alleges that he was kept in the restraint chair for approximately ten hours and was

never evaluated by a mental health professional.   (ECF No. 97 at 5.)   He further alleges that

while in the restraint chair, Defendant Wynegar called him a racial epithet, made a comment about

lynching him, and fastened zip-ties around his neck, where they remained for approximately an

hour.   (ECF No. 93 at 3.)

Following this incident, Miller filed two separate Inmate Grievances dated June 8, 2015

and June 10, 2015.   (ECF No. 91 at 5.)   Miller's first grievance relates to Miller's time in the

restraint chair and states the following:

> On Sunday June 7th, 2015 @ 12:24 a.m. Lt. Allen authorized his officers COII
> Peters COII Mooney COII Maddox COII Fisher & COII Wynegar to put me in the
> restraint chair for 10 hours. I had never done anything that night to provoke this
> action.

4

(ECF No. 90-4 at 2.)   Miller's second grievance relates to his treatment by Nurse Coleman and states the following:

> On June 6th, 2015 on 2nd Shift LPN Joyce Coleman did deny proper medical care following Officer involved fall in Q2 Pod 4. She denied me an x-ray, ice and a talk with her superior. This is cruel and sadistic. On portable and stationary pod 4 cameras caught the whole event.

(ECF No. 90-5 at 2–3.)

With regards to the grievance relating to the restraint chair, which is at issue in this action, a Captain reviewed Miller's grievance and seemingly found the use of the restraint chair was appropriate stating, "Restraint chair is based on behavior, once behavior becomes compliant." (ECF No. 90-4 at 2.)   Miller appealed the Captain's finding to Defendant Ballard who accepted the Captain's finding that the use of the restraint chair was proper stating, "You were exhibiting destructive behavior on the date.   You refused to comply with orders and control tactics were utilized to bring you into compliance you are mistaken regarding the timeframe."   (*Id.*)   Miller appealed Defendant Ballard's decision to Defendant Rubenstein who accepted Defendant Ballard's finding.   (*Id.*)

Miller subsequently filed this action on August 25, 2016 against Defendants Rubenstein, Ballard, Wynegar, and Allen alleging excessive force arising from the alleged fall and use of the restraint chair, (Count I), (Count II), assault and battery, (Count III), intentional infliction of emotional distress ("IIED"), (Count IV), false imprisonment, (Count V), and negligence (Count VI).   (ECF No. 7.)

Defendants Ballard and Rubenstein moved to dismiss Miller's Complaint.   (ECF Nos. 28.)   Defendant Wynegar also moved to dismiss the Complaint, (ECF No. 34), and for partial

summary judgment on Miller's claims arising from the fall that occurred outside of his cell.    (ECF No. 53.)    This Court held a motions hearing on June 30, 2017, (ECF No. 74), and, based on the findings from the hearing, entered an order denying in part Defendants Rubenstein's and Ballard's motion to dismiss but granting it in part insofar as it sought to dismiss the substantive due process claim alleged in Count I and the supervisory liability claim alleged in Count I against Defendant Rubenstein.    (ECF No. 76.)    The Court further granted Defendant Wynegar's motion for partial summary judgment, but denied Defendant Wynegar's motion to dismiss.    (*Id.*)

Following the motions hearing, Miller filed an Amended Complaint bolstering his allegations against Rubenstein and removing Count II.    (ECF No. 78.)    Defendants Ballard and Rubenstein collectively, Defendant Wynegar, and Defendant Allen subsequently filed the present motions for summary judgment.    (ECF Nos. 90, 92, 96.)    Miller timely responded to all three motions.    (ECF Nos. 102, 109, 112.)    Defendants filed timely replies.    (ECF Nos. 104, 111, 114.)    All three motions are now ripe for adjudication.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact."    Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party.    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).    "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."    *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).    When evaluating such factual issues, the Court must

view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## III. DISCUSSION

In their respective motions, all three Defendants argue that Miller failed to exhaust his administrative remedies with regard to Defendant Wynegar's alleged use of zip-ties and racial slurs and Defendant Allen's alleged threat and assault of Miller. (*See* ECF No. 91 at 7–8; ECF No. 93 at 4–6; ECF No. 9 at 13–15.) Defendants Rubenstein and Ballard and Defendant Allen further argue that they are entitled to qualified immunity and that Miller's Eighth Amendment

claim and state claims fail factually. (*See* ECF No. 91 at 18; ECF No. 97 at 17–19 respectively.) However, all three Defendants have also included additional, differing arguments in their respective motions. Therefore, this Court will address each Defendant's summary judgment motion separately.

### A. Defendant Rubenstein's and Ballard's Motion for Summary Judgment

In his Amended Complaint, Miller alleges that Defendants Rubenstein and Ballard violated his constitutional rights by implementing and continuing to allow polices that exposed Miller to excessive force as wanton forms of punishment. (ECF No. 78 at ¶ 62.). Miller further asserts that Defendants Rubenstein and Ballard are liable as supervisors for the actions of all Defendants who used or condoned the use of excessive force against Miller and otherwise violated Miller's rights. (*See id.* at ¶¶ 4–5.)

In their motion for summary judgment, Defendants Rubenstein and Ballard argue that Miller failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act and its West Virginia equivalent. (*See* ECF No. 91 at 7–9.) Defendants further argue that, with regards to Miller's exhausted claims, Defendants did not violate Miller's Eighth Amendment rights or common law rights, and to the extent that they did, they are protected by qualified immunity. (*See id.* at 9–16.) Lastly, Defendants argue that Miller's claim for injunctive relief fails as a matter of law. (*See id.* at 16–18.) The Court will address each of these arguments in turn.

### 1. Failure to Exhaust Administrative Remedies

Defendants Rubenstein and Ballard first argue that Miller has failed to exhaust his administrative remedies before filing the present action under state and federal law. (*See* ECF No. 91 at 7–9.) Specifically, Defendants argue that Miller failed to properly grieve his claims

that Defendant Wynegar allegedly used zip-ties and racial slurs and that Defendant Allen poked him in the chest and threatened him. (*See* ECF No. 91 at 8.)

Miller argues that that he properly filed two grievances after the incident that complied with West Virginia Division of Corrections ("WVDOC") policy and federal law regarding the level of specificity that grievances must contain. (ECF No. 109 at 16.) Specifically, Miller argues that WVDOC does not require a certain level of detail to be included in a grievance for a prisoner to be deemed to have exhausted his administrative remedies and that grieving general conditions is enough. (*Id.* at 15; *see also* ECF No. 102 at 9.) Miller further argues that the West Virginia Prison Litigation Reform Act does not apply because Miller was subjected to violence. (ECF No. 112 at 10.) Lastly Miller argues that there are genuine issues as to material facts regarding the sufficiency of his grievances and, therefore, it should be left for a jury to resolve. (*Id.* at 11.)

### a. *Prison Litigation Reform Act*

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before challenging the conditions of their confinement in federal court. *See* 42 U.S.C. § 1997e(a). Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The mandatory language of the PLRA "means a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Miller v. French*, 30 U.S. 327, 337 (2000)).

Failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, the burden lies with a defendant to prove that an inmate failed to exhaust the available remedies before filing a civil action. *Creel v. Hudson*, No. 2:14-cv-10658, 2017 WL 4004579, at *3 (S.D. W. Va. Sept. 12, 2017). Whether an inmate has exhausted available administrative remedies under the PLRA is a question of law to be determined by a judge. *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010); *see also Lee v Willey*, 789 F.3d 673, 678 (6th Cir. 2015) ("[E]xhaustion under the PLRA is analogous to other threshold issues of judicial administration that 'courts must address to determine whether litigation is being conducted in the right forum at the right time.'" (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010))).

Under West Virginia law, "[a]n ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures. . . ." W. Va. Code § 25-1A-2(d). The WVDOC sets the uniform procedures for filing an inmate grievance. See W. Va. Code § 25-1A-2. If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies." Policy Directive 335.00 at 4.

The procedure for filing an inmate grievance is as follows:

An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager. Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number. The unit manager is required to return an answer to the grievance back to the inmate within five days. If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review.

10

> Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response." "The Warden/Administrator shall respond to the appeal . . . within five (5) days." Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the applicable time has passed. The Commissioner is allotted ten days to respond to the appeal.

*Id.* at 5–9. Once a court determines that a plaintiff is subject to the PLRA's exhaustion requirement, the Court must then determine whether the plaintiff has met that requirement. *See Freeland v. Ballard*, No. 2:14-cv-29445, 2017 WL 337997, at *4 (S.D.W. Va. Jan. 23, 2017).

Here, Miller filed two grievances, one regarding the use of the restraint chair and one regarding the medical attention he received from Nurse Coleman. (*See* ECF No. 90-4 at 2; ECF No. 90-5 at 2–3.) The filing of these grievances demonstrates that the grievance process was available at MOCC and that Miller knew how to file an appropriate inmate grievance. The first grievance simply stated, "Lt. Allen authorized his officers COII Peters COII Mooney COII Maddox COII Fisher & COII Wynegar to put me in the restraint chair for 10 hours." (ECF No. 90-4 at 2.) Miller focused solely on the amount of time he was held in the restraint chair and did not mention any use of excessive force, including the use of zip-ties and racial slurs. (*See id.*) Additionally, Miller did not file a separate grievance alleging any assault or threat by Defendant Allen. Therefore, this Court **FINDS** that Miller failed to exhaust his administrative remedies with regard to his claims of Defendant Wynegar's alleged use of zip-ties and racial slurs and Defendant Allen's alleged threat and assault of Miller. *See Jones v. FCI Beckley Med. Staff Emps.*, No. 5:11–cv–00530, 2013 WL 5670858, at *12, *13 (S.D. W. Va. Oct. 15, 2013) (finding that "[p]laintiff exhausted his administrative remedies with respect to his claim that a medical cart struck him and injured his left arm, but not with respect to his claims that "defendants failed to

stop and render aid" and that "he should have received an MRI" (quoting the Proposed Findings and Recommendations from the Magistrate Judge)).    Accordingly, this Court **GRANTS IN PART** Defendants Rubenstein and Ballard's motion for summary judgment insofar as it seeks to dismiss Miller's claims regarding Defendant Wynegar's alleged use of zip-ties and racial slurs and Defendant Allen's alleged assault and threatening of Miller for failure to exhaust under the PLRA.

b.  *West Virginia Prison Litigation Reform Act*

The West Virginia Prison Litigation Reform Act ("WVPLRA"), like the federal PLRA, makes it mandatory for an inmate to first exhaust administrative remedies provided by the inmate's correctional facility before instituting a civil action challenging the inmate's confinement.    W. Va. Code § 25-1A-2; *see also White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility in which he/she is housed.").    This mandatory language is tempered by § 25-1A-2(c) which provides that this statute should not be used to prevent an inmate from bringing a civil action "alleging past, current, or imminent physical or sexual abuse.")    However, an amendment of this statute went into effect in 2013, requiring exhaustion for all inmate actions stating, "[N]o inmate shall be prevented from ... bringing a civil or criminal action alleging violence, sexual assault[,] or sexual abuse, a*fter exhaustion of administrative remedies*."    W. Va. Code § 25-1A-2a(i) (emphasis added); *see also Baker v. Hammons*, No. 2:15-cv-13849, 2016 WL 538481, at *3 (S.D. W. Va. Feb. 9, 2016) ("Put simply, section 25-1A-2a of the West Virginia Code requires an inmate to exhaust his or her administrative remedies even in cases involving violence, sexual assault, or sexual abuse—albeit under special grievance procedures.").

Accordingly, Miller had to exhaust his administrative remedies as to all of his claims, including the ones that allege violence. However, as discussed above, Miller did not exhaust his administrative remedies as to his claims regarding the alleged use of zip-ties and racial slurs by Defendant Wynegar and the alleged threat and assault by Defendant Allen. Therefore, the Court **GRANTS IN PART** Defendants Rubenstein's and Ballard's motion for summary judgment insofar as it seeks to dismiss Miller's claims regarding Defendant Wynegar's alleged use of zip-ties and racial slurs and Defendant Allen's alleged assault and threatening of Miller for failure to exhaust under the WVPLRA. (ECF No. 90.) Thus, the Court will address Defendants' arguments only insofar as they relate to Miller's exhausted claims.

2. Necessity of the Restraint Chair

The Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners . . . where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see also Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) ("The Supreme Court has extended the application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials."). A claim brought under the Eighth Amendment must contain both an objective and a subjective element. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To satisfy the objective element, an inmate must show that that the "deprivation suffered or injury inflicted on the inmate was sufficiently serious." *Id.* For excessive force claims, an inmate does not have to show that the force was an "extreme deprivation" or "significant" pain or injury to establish the objective element, but must only show that more than a de minimis pain or injury occurred. *See Williams*, 77 F.3d at 761 (citing *Hudson*, 503 U.S. at 9).

13

To satisfy the subjective element, an inmate must demonstrate that "the prison official . . . acted with 'wantonness in the infliction of pain.'" *Williams*, at 77 F.3d at 761 (quoting *Whitley*, 475 U.S. at 322). The Supreme Court has stated that the unnecessary infliction of pain includes inflictions of pain that are "totally without penal justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "When prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cantrell v. Rubenstein*, No. 2:14-cv-17419, 2016 WL 5723601, at *19 (S.D. W. Va. Aug. 23, 2016), *report and recommendation adopted*, No. 2:14-cv-17419, 2016 WL 5660339, (quoting *Whitely*, 475 U.S. at 320–21).

In determining whether use of force violates the Eighth Amendment, the Supreme Court has utilized the following four factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Whitley*, 475 U.S. at 321. With regards to determining whether the use of restraints violates the Eighth Amendment, Defendants direct the Court to the Supreme Court's opinion in *Hope v. Pelzer*, which involved correctional officers tying an inmate to a hitching post. *See* 536 U.S. 730 (2002). The Supreme Court cited the following facts in making its determination that the inmate's Eighth Amendment rights had been violated: the fact that the plaintiff had already been subdued, the "clear lack of an emergency situation," the knowing subjection of the plaintiff to "a substantial risk of physical harm," and "the unnecessary pain caused by the restricted position." *See id.* at 738.

Defendants Rubenstein and Ballard rely on the above factors cited in *Hope* to assert that the use of the restraint chair was applied in good faith and thus did not violate Miller's Eighth Amendment rights. (ECF No. 91 at 9.) Specifically, the primary safety concern was to protect Miller from self-harm. (*See id.*) Defendants state that, by the time Miller was placed in the restraint chair, Miller had already engaged in self-harm by diving headfirst into the concrete floor[2] and Miller had continually expressed his desire to commit suicide.[3] (*See id.*). Defendants also state that officers tried to control Miller's behavior without the use of force before resorting to the restraint chair. (*See id.*) Defendants further assert that, although Miller was locked in a segregation cell prior to being placed in the restraint chair, it was "crystal clear" that the safety concerns had not abated. (*Id.* at 11.) Lastly, Defendants assert that Miller was verbally combative and made threats towards Nurse Coleman, adding to the necessity, and penal purpose, of the restraint chair. (ECF No. 91 at 12.)

Miller argues that Defendants assertions rest on disputed facts. (ECF No. 112 at 12.) Miller asserts that he was fully compliant with correctional officers[4], who, he states, had no concern for his mental health. (*Id.* at 13.) In support of his contention that he was not placed in the restraint chair out of concern for self-harm, Miller asserts that the prolonged use of the restraint chair had no relationship to any perceived threat of self-harm and that Defendants' concern for self-harm is purely pre-textual. (*Id.* at 12.) Further, Miller asserts, in responses to the other

---

[2] In the hearing this Court held on June 30, 2017, the Court found, after reviewing a video of the incident, that, while being returned to his cell, Miller purposely moved his body in a way that caused him to fall headfirst into the floor. This is based on a rough draft of the hearing transcript, and accordingly includes no direct quotations or citations. The parties are encouraged to request an official transcript from the court reporter should they desire to review any statements from that hearing.

[3] Miller admitted to expressing his desire to commit suicide in a video regarding the incident. (ECF No. 90-2 at 5:09–5:25.)

[4] In support of his contention that he was fully compliant before he was placed in the restraint chair, Miller cites video of the incident. (*See* ECF No. 108, Ex. H.)

Defendants summary judgment motions, which he incorporated by reference in his response to Defendants Rubenstein's and Ballard's motion, that Defendant Allen placed him in the restraint chair as retaliation for continually requesting medical attention.[5]   (*See* ECF No. 109 at 10–12.) Miller states that he was told he was placed in the chair for non-compliance and not to prevent him from self-harming, which is against the WVDOC policy directive regarding use of force.[6]   (*Id.*) Miller also cites correctional officers' alleged failure to follow protocol for suicidal inmates and the lack of provision of any mental health services to Miller while he was in the restraint chair in support of his argument.   (*Id.* at 12–13.)   Lastly, Miller argues that correctional officers made no effort to temper the severity of the force used on Miller.   (*Id.* at 13.)

The evidentiary record, taken in the light most favorable to Miller, establishes that there are genuine issues of material fact concerning the necessity of the use of the restraint chair. Specifically, there appears to be a genuine issue of material fact as to whether Miller was placed in the restraint chair to protect from self-harm or for some other penal or retaliatory purpose.   This factual dispute bears on the *Whitley* as well as the *Hope* factors used to determine the necessity of the use of force.   Additionally, there also appears to be an issue of material fact as to whether Miller was compliant when he was placed in the restraint chair and, thus, also bearing on whether the use of the restraint chair was necessary.   Therefore, the Court **FINDS** that there are genuine issues of material facts as to Miller's Eighth Amendment Claim.   Accordingly, the Court

---

[5]  In support of this contention, Miller cites his deposition testimony.   (*See* ECF No. 109-1 at 59 (Miller Dep.).)

[6]  In support of his proposition, Miller cites WVDOC Policy Directive 307.00 regarding the use of restraints.   (*See* ECF No. 109-2.)   Policy Directive 307.00 in relevant part states the following:

> It is the policy of the West Virginia Division of Corrections to maintain a mechanism . . . [to] provide that instruments and restraints, such as handcuffs, irons, and straightjackets, are never applied as punishment and are applied only with the approval of the Warden/Administrator or designee.

(ECF No. 109-2 at 1.)

**DENIES IN PART** Defendants Rubenstein's and Ballard's motion for summary judgment insofar as it requests judgment as a matter of law on Miller's Eighth Amendment claims.

### 3. Supervisory Liability

Miller seeks to hold Defendants Ballard and Rubenstein liable as supervisors for the conduct of Defendants Allen and Wynegar on a theory of deliberate indifference and reckless endangerment. (ECF No. 78 at ¶¶ 4–5.) Specifically, Miller alleges that "Defendants Rubenstein's and Ballard's failure to stop the abusive and excessive uses of force, despite their actual knowledge of its occurrence, amounts to deliberate indifference to the care and safety of, and a tactic [sic] approval of such wrongful force against, the individuals incarcerated in segregation at the MOCC." (*Id.* at ¶ 98.)

In their motion, Defendants argue that Miller has failed to assert sufficient facts to support his deliberate indifference and reckless endangerment claims. (ECF No. 91 at 14.) Specifically, Defendants argue that Miller has not alleged sufficient facts to show that they had the actual or constructive knowledge of the harms that Miller is alleging. (*See id.* at 16; ECF No. 114 at 7.) Defendants further argue that to the extent Miller asserts that martial law was implemented at MOCC, that assertion is a rumor and that Defendant Ballard testified at his deposition that he told officers that if they heard that martial law was in effect to "put a stop to it" and "correct it." (ECF No. 114 at 8 (citing ECF No. 114-1 at 68:17–23 (Ballard Dep.)).)

The Fourth Circuit has held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th

Cir. 1994).   To maintain a claim for supervisory liability in a § 1983 action, a plaintiff must establish the following three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw* 13 F.3d at 799 (internal citations omitted).

Defendants' arguments focus on the first two elements of the *Shaw* test.   (*See* ECF No. 91 at 16.)   In order meet the first element, a plaintiff must show that the supervisor had actual knowledge of the conduct engaged in by the subordinate that posed an unreasonable risk of constitutional injury to the plaintiff.   *Id.* (citing *Slakan*, 737 F.2d 368, 373 (4th Cir. 1984)); *see also Farmer v. Brennan*, 511 U.S. 825, 838 (1970) (holding that the supervisor must have actual subjective awareness in order for liability to attach).   In order to meet the second element and show that the supervisor was deliberately indifferent, a plaintiff may demonstrate "a supervisor's 'continued inaction in the face of documented widespread abuses.'"   *Shaw*, 13 F.3d at 799 (quoting *Slakan* 737 F.2d at 373).   However, a plaintiff has a heavy burden of proof because he or she cannot satisfy the second element by pointing to a single incident or isolated incidents.   *See id.* (citing *Slakan*, 737 F.2d at 372–73).

To support his argument that Defendants had knowledge, Miller asserts that Defendants were responsible for overseeing the MOCC and reviewed all of the excessive force grievances and all use of force review committee incident reports.   (*See* ECF No. 112 at 15.)   Miller further asserts that documents and audio recordings of correctional officers show that Defendant Ballard

instructed correctional officers that martial law was in place at MOCC and that both Defendants "acknowledged their awareness of the 'martial law' directive well before 2015 and did nothing [to] disturb that directive." (*Id.* at 16 (citing ECF No. 112-1 at 668 (Ballard Dep.); ECF No 112-2 at 32–33 (Rubenstein Dep.); ECF No. 112-3 (statements and grievances from other inmates)).) This alleged martial law directive created an environment where efforts to temper use of force were not required in the solitary confinement unit where Miller was housed. (*See* ECF No. 112 at 15.)

To the extent Miller suggests that Defendants may be held liable due to their role in receiving and reviewing inmate grievances, "it is well established that denying a prisoner's grievances, by itself, 'is not the type of personal involvement required to state an Eighth Amendment claim.'" *Cantrell*, 2016 WL 573601, at *26. (citing *Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795870, at *9 (S.D. W. Va. Sept. 30, 2015)). However, the Court **FINDS** that Miller has asserted enough facts to raise a genuine issue of material fact as to Defendants' knowledge or awareness of an unreasonable risk of harm or conduct by their subordinates. Accordingly, this Court **DENIES IN PART** Defendants' motion for summary judgment insofar as it requests judgment as a matter of law on Miller's supervisory liability claims.

4. Qualified Immunity

The doctrine of qualified immunity "shields executive officers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cantrell*, 2016 WL 5723601, at *27 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court must look at the following two factors in determining whether an official is entitled to qualified immunity: (1) whether,

after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right and (2) if there was a violation, whether the right was clearly established at the time of the deprivation such that a reasonable official would understand their conduct was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 201, 205–06 (2011). Courts have the discretion to decide which of these two factors should be addressed first in any particular case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In order to defeat qualified immunity for supervisory liability claims, which Miller alleges here, a plaintiff "must make several separate showings to demonstrate that [a defendant] lack[s] qualified immunity. *Shaw*, 13 F.3d at 801. Specifically, a plaintiff must demonstrate the following: (1) it was clearly established at the time of the incident that the supervisory defendants could be held liable for the constitutional violations committed by their subordinates; (2) it was clearly established at the time the supervisory defendant was supervising the subordinate that the degree of force the supervisory defendant knew the subordinate was using against the plaintiff was unconstitutional; and (3) a reasonable person in the supervisory defendant's positon would have known that his actions were unlawful. *See id.*

Here, Defendants Rubenstein and Ballard argue that they are entitled to qualified immunity as to Miller's supervisory and state claims. (*See* ECF No. 91 at 14.) First, as discussed above, there is a genuine issue of material fact as to whether Miller's Eighth Amendment rights were violated. Second, although the Fourth Circuit has held that "a supervisor who was deliberately indifferent in the face of a pervasive and unreasonable risk of harm could be held liable under § 1983 where the inaction bore an affirmative causal link to the harm suffered by the plaintiff, *see Shaw*, 13 F.2d at 802 (citing *Slakan*, 737 F.2d at 377), as more fully discussed above, there are

genuine issues of material fact as to whether Defendants Rubenstein and Ballard had the requisite knowledge to be held liable to Miller under a theory of supervisory liability. Therefore, because the above factual disputes are relevant to the factors considered to determine if there is qualified immunity, the Court cannot determine whether Defendants are entitled to qualified immunity at this stage. Additionally, as more fully discussed below, there are genuine issues of material fact as to Miller's state law claims, precluding a ruling of qualified immunity on them at the summary judgment stage. Accordingly, the Court **DENIES IN PART** Defendants' motion for summary judgment insofar as it asserts they have qualified immunity as to Miller's claims.

5. Claim for Injunctive Relief

In his Complaint, Miller requests various forms of injunctive relief. (*See* ECF No. 78 at ¶¶ 139-140.) Specifically, Miller seeks release from segregation or, alternatively, a transfer to a different WVDOC facility. (*Id.* at ¶ 139.) Miller further seeks that Defendants "cease all unconstitutional policies and practices currently in effect at MOCC, including but not limited to, the declaration of martial law and practice of permitting any level of force to be used against inmates in segregation units without making efforts to temper." (*Id.* at ¶ 140.)

Defendants argue that Miller's request for injunctive relief fails because "Miller has only demonstrated that his injuries are theoretical." (ECF No. 91 at 17.) Defendants also argue that Miller has an adequate remedy against the defendants for any alleged injuries through seeking monetary compensation. (*Id.* at 18.)

In considering whether to issue a permanent injunction, the District Court must weigh the following factors:

> (1) that [plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Additionally, 18 U.S.C. § 3626(a)(1)(A) provides that [p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the [f]ederal right of a particular plaintiff or plaintiffs." Thus, the right to prospective relief with regards to prison conditions assumes that there has been finding that a federal constitutional right has likely been violated. *See Motto v. Rider*, No. 5:07-cv-00627, 2008 WL 4224814, at *4 (S.D. W. Va. Sept. 9, 2008).

As discussed more fully above, there are genuine issues of material fact as to whether Miller's constitutional rights have been violated. Therefore, this Court cannot find at this stage whether Miller is entitled to an injunction. Accordingly, the Court **DENIES IN PART** Defendants' motion for summary judgment insofar as it requests, as a matter of law, that Miller's request for injunctive relief be dismissed.

### B. Defendant Wynegar's Motion for Summary Judgment

In his Amended Complaint, Miller alleges that Defendant Wynegar used excessive force against Miller by tying zip-ties around his neck and calling him a racial slur, thus violating Miller's Eighth Amendment rights. (ECF No. 78 at ¶¶ 46–47.) Miller further alleges that Defendant Wynegar's actions constituted assault and battery and intentional infliction of emotional distress. (*See id.* at ¶¶ 147, 161.) Lastly, Miller alleges that Defendant Wynegar's placing of Miller in the restraint chair constituted false imprisonment. (*See id.* at ¶ 169.)

In his motion to dismiss, Defendant Wynegar argues that Miller failed to exhaust his administrative remedies regarding Defendant Wynegar's alleged use of zip-ties and racial slurs.

(*See* ECF No. 93 at 4–6.)   Defendant Wynegar further asserts Miller's reliance on his deposition is not sufficient to show that there are genuine issues of material fact, thus rebutting summary judgment.   (*Id.* at 6.)   The Court will address Defendant Wynegar's latter argument first.

### 1.   Sufficiency of Miller's Deposition to Rebut Summary Judgment

To the extent that Defendant Wynegar asserts that Miller's sworn deposition testimony is not enough to rebut a motion for summary judgment, Defendant Wynegar is incorrect.   (*See* ECF No. 93 at 6.)   Federal Rule of Civil Procedure 56(c)(1) provides, in relevant part, that a party asserting that there is a genuine dispute of fact must assert his position by doing the following:

> (A) [C]iting to particular parts of materials in the record, *including depositions*, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . .

Fed. R. Civ. Pro. 56(c)(1) (emphasis added).   Furthermore, the Fourth Circuit has held that an inmate's sworn statements are sufficient to defeat summary judgment.   *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citing *Davis v. Zahradnic*, 600 F.2d 458, 460 (4th Cir. 1979)) (holding that an inmate's verified complaint was the equivalent of an affidavit and sufficient to defeat summary judgment); *see also Humple v. Hilewitz*, No. 2:13-cv-14618, 2016 WL 1117600, at *2 (S.D. W. Va. Mar. 22, 2016).   Therefore, Miller can use his deposition to assert that a factual dispute exists.   Accordingly, the Court **DISMISSES IN PART** Defendant Wynegar's motion for summary judgment insofar as it argues that Miller's deposition is insufficient to overcome a motion for summary judgment.

However, to the extent that Miller argues that there are genuine issues of material fact regarding the sufficiency of Miller's grievances and, therefore, Defendants' affirmative defense of exhaustion should be left to the jury, Miller is incorrect.   (*See* ECF No. 102 at 8–10.)   This Court

has held that "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." *Creel*, 2017 WL 4004579, at \*3 (quoting *Drippe*, 604 F.3d at 782). Thus, this Court can decide whether Miller failed to administratively exhaust his claims at the summary judgment stage.

### 2. Failure to Exhaust Administrative Remedies

Defendant Wynegar argues that because Miller did not mention the use of zip-ties or racial slurs in his one grievance relating to the restraint chair, Miller did not properly exhaust his administrative remedies. (ECF No. 93 at 6.) Thus, Defendant Wynegar argues, Miller's claims regarding the zip-ties and racial slurs should be dismissed. (*Id.*)

In his response to the motion, Miller argues that WDOC Policy Directive 335.00, which Miller has attached to his response as an exhibit,[7] does not require a certain level of detail for an inmate grievance in order for a prisoner to be deemed to have exhausted his administrative remedies. (ECF No. 102 at 9.) Specifically, Miller points the Court to the policy language that permits inmates to grieve redress for "general circumstances" of their confinement. (*Id.*) Miller further argues that the grievance policy does not require an inmate to allege each component of his claim and that Miller's grievance was specific enough to enable the Unit Manger to conduct an investigation and learn the specifics, such as the use of zip-ties and racial slurs. (*Id.*)

As stated above, the PLRA, and the West Virginia equivalent, require inmates to first exhaust all available administrative remedies before filing a civil action challenging the conditions of their confinement. *See* 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2. WVDOC Policy

---

[7] Defendant Wynegar does not contest the veracity of this exhibit.

Directive defines a grievance as involving "general circumstances *or* particular episodes."  (*See* 102-3 at 2 (emphasis added).)

Here, as discussed more fully above, the Court finds that Miller did not exhaust his administrative remedies with regard to his allegation of the use of zip-ties and racial slurs while he was in the restraint chair.   To the extent that Miller argues that the use of zip-ties and racial slurs were all part of the singular episode of the restraint chair, that argument does not comport with the text of Miller's grievance.   (*See* ECF No. 90-4 at 2.)   Miller's grievance specifically grieves the amount of time he was held in the restraint chair.   (*See id.*)   Thus, Miller is grieving a "particular episode" and not the general circumstances of his confinement.   Additionally, at no place in his grievance about this particular episode did Miller mention the use of zip-ties, racial slurs, or any additional force used on him other than the restraint chair.   Accordingly, this Court **GRANTS IN PART** Defendant Wynegar's motion for summary judgment insofar as it seeks to dismiss Miller's claims regarding the use of zip-ties and racial slurs and for failure to exhaust under the PLRA.

### C. *Defendant Allen's Motion for Summary Judgment*

In his Amended Complaint, Miller alleges that Defendant Allen poked Miller in the chest and threatened him with retaliation if Miller did not cease requesting medical attention.   (*See* ECF No. 78 at. ¶¶ 34–42.)   Miller further alleges that Defendant Allen acted upon that threat by placing Miller in a restraint chair and ordering his correctional officers to keep Miller there for ten hours.  (*See id.*)   Miller asserts that Defendant Allen's conduct constitutes excessive force under the Eighth Amendment, assault and battery, intentional infliction of emotional distress, false imprisonment, and negligence.   *(See id.* at. ¶¶ 109–10, 144, 155–56, 168, 176.)   Miller further

alleges that, under his supervision, Defendant Allen allowed correctional officers to use zip-ties and racial slurs against Miller, failing to temper the excessive force the officers used. (*Id.* at 1–2.)

In his motion for summary judgment, Defendant Allen argues that Miller's claims against him fail as a matter of law. (*See* ECF No. 97 at 7.) Specifically, Defendant Allen argues that Miller failed to exhaust his administrative remedies as to his claims that Defendant Wynegar's tied zip-ties around his neck and used racial slurs and as to his claims that and Defendant Allen assaulted and threatened him. (See id. at 8–19.) Defendant Allen further argues that Miller failed to offer sufficient evidence to establish Defendant Allen violated Miller's Eighth Amendment rights and failed to offer sufficient evidence to establish Defendant Allen committed the alleged state law torts. (*See id.*) Lastly, Defendant Allen argues that he is entitled to qualified immunity because no clearly established right of Miller's was violated. (*See id.*) The Court will address each of Defendant Allen's arguments in turn.

1. Failure to Exhaust Administrative Remedies

With regard to administrative exhaustion, Defendant Allen argues that Miller failed to file a grievance relating to any of Miller's claims against Defendant Allen other than the use of the restraint chair. (ECF No. 97 at 14.) Specifically, Defendant Allen argues that Miller failed to exhaust his administrative remedies relating to his allegations of the use of zip-ties and racial slurs and his allegations that Defendant Allen poked him in the chest and threatened him. (*Id.* at 13.) In his response, Miller reiterates his argument from his response to Defendants Rubenstein's, Ballard's and Wynegar's motions that the grievance process does not require any specificity and that an inmate is allowed to seek redress for "general circumstances." (ECF No. 109 at 15.)

Here, for reasons discussed above, because Miller did not mention the zip-ties and racial slurs in any grievance he filed nor in any additional grievance, this Court **FINDS** that Miller failed to exhaust his administrative remedies with regard to those claims. Additionally, Miller did not file any grievances asserting these claims or any general claims that Defendant Allen assaulted or harassed him in anyway. Thus, this Court **FINDS** that Miller has failed to exhaust his administrative remedies with regard to those claims. Accordingly, this Court **GRANTS IN PART** Defendant Allen's motion insofar as it seeks to dismiss Miller's claims regarding the use of zip-ties and racial slurs and Defendant Allen's alleged threat and assault for failure to exhaust under the PLRA. This Court will address Defendant Allen's other defenses insofar as they relate to Miller's exhausted claims.

### 2. Insufficient Evidence for Eighth Amendment Claim

With regard to Miller's Eighth Amendment claim, Defendant Allen argues that he is entitled to summary judgment because Miller has not established sufficient evidence to support his claim that Defendant Allen's placing of Miller in the restraint chair amounted to an Eighth Amendment violation. (ECF No. 97 at 8.) In his response, Miller asserts that, at minimum, there is an issue of material fact regarding Defendant Allen's liability under the Eighth Amendment. (*See* ECF No. 109 at 9.)

The standard for evaluating an Eighth Amendment claim is set forth above. *See* discussion *supra* Section III.A.2. Defendant Allen's arguments appear to focus entirely on the subjective element of Miller's Eighth Amendment claim. As to first *Whitley* factor—the need for the application of force—Defendant Allen asserts that Miller's erratic behavior of barricading himself in his cell and claiming that he was having a heart attack and Miller's suicidal threats in

conjunction with Miller's disruptive behavior a few hours before justified Miller's being placed in the restraint chair.[8]  (*See* ECF No. 97 at 11–12.)   Additionally, in the video of the incident, Defendant Allen states that Miller is being placed in the restraint chair because Miller was threatening to commit suicide.   (ECF No. 108, Ex. H at 00:15–:50.)

As to second *Whitley* factor—the relationship between the need for the force and the amount of force used—Defendant Allen asserts that the restraint chair was necessary to protect Miller from self-harm and to prevent further damage.   (ECF No. 97 at 12.)   Defendant Allen further asserts that the decision to place Miller in the restraint chair was "profoundly reasonable" in light of Miller's irrational behavior.   (*Id.*)   Specifically, Defendant Allen points to Miller having thrown himself on the ground while he was standing cuffed earlier that day as giving correctional officers sufficient reason to believe Miller would make good on his suicidal threats. (ECF No. 111 at 3.)   Lastly, Defendant Allen asserts that he complied with MOCC Policy Directive 313.02, which allows correctional officers to use calculated force to gain control of an inmate who is attempting suicide or self-harming.   (ECF No. 111 at 4; *see also* ECF No. 109-5 (WVOC Policy Directive 313.02).)

Defendant Allen's above assertions also appear to weigh on the third *Whitley* factor as well—the extent of the reasonably perceived threat that the force was needed to quell.   Defendant Allen asserts that Miller's disruptive behavior that day, which ranged from kicking and covering his door to riling up other inmates in his pod, refusing directives, and cursing at correctional officers, all of which resulted in multiple MOCC policy violations, from a few hours earlier show

---

[8]  Defendant Allen stated the following explanation in his deposition, "I mean, you barricade yourself into a cell and then you tell me you're having a heart attack, you tell me your head is hurting, you tell me you're going to kill yourself, that's not normal."   (ECF No. 109-7 at 30: 14–18.)

that the extent of the force used was necessary.  (ECF No. 97 at 11.)  Defendant Allen also points to the fact that Miller continued to state that he felt suicidal while in the restraint chair and threatened Nurse Coleman.  (ECF No. 111 at 7.)  Defendant Allen further asserts that, given the hour that these events occurred, there were no mental health professionals available to evaluate Miller to ensure that he no longer posed a threat to himself if released from the restraint chair. (ECF No. 97 at 12.)

Lastly, turning to the fourth *Whitley* factor—any efforts made to temper the severity of the force used—Defendant Allen asserts that prior to placing Miller in the restraint chair, Miller was evaluated by medical staff and he was placed on strip cell status.  (*Id.* at 11.)  Defendant Allen further asserts that Miller's "manipulative, non-compliant behavior" was part of a pattern of disruptive conduct by Miller that negatively affected the MOCC's working order and security. (ECF No. 111 at 3.)

Miller, however, argues that there are disputes as to material fact with regard to the need for the use of the restraint chair and the need for the length of time Miller was held in the restraint chair.  (*See* ECF No. 109 at 10–14.)  First, Miller disputes that he was a threat to anyone, including himself.  (*See id.* at 11.)  Miller asserts that there is no evidence that the use of force was necessary given that Miller was fully complaint when he was placed on strip cell and that Defendant Allen only placed Miller in the restraint chair as retaliation for continuing to ask for medical attention.  (*Id.* at 10.)  Miller also asserts that the video of the incident, Defendant Allen's deposition testimony, and the responses to Miller's grievances show that Miller was placed in the restraint chair in order to gain compliance instead of to protect him from self-harming. More specifically, Miller points to the fact that in the video Defendant Allen states that Miller can

leave the chair once he becomes compliant. (*Id.* at 11; *see also* ECF No. 108, Ex. H at 8:00–:07.) Miller also points to the fact that in his deposition testimony, Defendant Allen stated that, at the time Miller was placed in the restraint chair, Miller had not damaged any property and that Miller had not threatened any of the correctional officers. (ECF No. 109 at 11; *see also* ECF No. 109-7 at 30–31.) Miller contends that any of the disciplinary issues that Defendant Allen cites as support for the use of the restraint chair are not authorized grounds for the use of the restraint chair. (ECF No. 109 at 12 (citing *Harper v. C.O. Joseph Barbagallo*, No. 2:14-cv-07529, 2016 WL 5419442, at *4 (S.D. W. Va. Sept. 27, 2016)).)

Second, Miller asserts that the extent of the force Defendant Allen used in response to the alleged threat that Miller would self-harm was unreasonable. (ECF No. 109 at 12.) Miller once again points to Miller's compliance to show that it was completely unreasonable for Miller to be kept in the restraint chair for ten hours. (*Id.* at 11.) Furthermore, Miller argues that if Defendant Allen properly followed MOCC policy by having Miller evaluated by a mental health professional then the extent of the force could have been tempered. (*Id.*)

Lastly, Miller asserts that Defendant did not make any attempts to temper the amount of force used. (*Id.* at 13.) Specifically, Miller asserts that Defendant Allen could have given Miller the opportunity to cease the disruptive behaviors or by immediately releasing Miller from the restraint chair immediately upon demonstrated compliance. (*Id.*) Miller also again asserts that the use of the restraint chair could have been tempered if Defendant Allen had Miller evaluated by a mental health professional. (*Id.*)

The above factual disputes over why Miller was placed in the restraint chair are material to determining whether the subjective element of the Eighth Amendment claim has been met.

Particularly, the Court cannot determine whether the use of force was in good faith to protect Miller from self-harm or was unnecessary, wanton, or as sadistic retaliation if there is a factual dispute as to why the force was used and a factual dispute as to whether Miller was compliant. Therefore, this Court **FINDS** that there are genuine issues of material fact as to whether the use of the restraint chair violated Miller's Eighth Amendment rights. *See, e.g.*, *Lowe v. Matheney*, 2015 WL 5795870, at *3 ("Nothing in the record indicates why the defendants felt it was reasonably necessary to strap a compliant inmate into a restraint chair. In my opinion, this fact is material and remains in dispute. Whether binding the plaintiff to a restraint chair for eight hours under the circumstances was malicious or sadistic remains a question for the jury.") Accordingly, this Court **DENIES IN PART** Defendant Allen's motion for summary judgment insofar as it requests the Court find as a matter of law that Miller has not presented sufficient evidence to establish an Eighth Amendment claim.

### 3. Insufficient Evidence for Common Law Claims

Counts III through VI of Miller's Amendment Complaint allege claims of assault and battery, intentional infliction of emotional distress, false imprisonment, and negligence against Defendant Allen. (*See* ECF No. 78 at ¶¶ 143–182). Specifically, Miller alleges that Defendant Allen intentionally battered Miller, acted intentionally and in an extreme manner towards Miller, and unconstitutionally confined Miller by using or condoning the use of the restraint chair. (*See id.*) Miller further alleges that Defendant Allen was negligent in following protocol while Miller was in the restraint chair, thus injuring him. (*Id.* at ¶ 179.)

Defendant Allen argues that Miller's state claims fail as a matter of law. (ECF No. 97 at 15.) Miller, however, argues that there are factual issues regarding the state claims, thus

precluding summary judgment. (ECF No. 109 at 16.) As stated above, this Court finds that Miller failed to exhaust his administrative remedies with regard to his claims against Defendant Allen, except for claims involving the use of the restraint chair. Therefore, this Court will address Miller's state law claims insofar as they relate to Defendant Allen's use of the restraint chair.

a. *Assault and Battery Claim*

To sustain a claim for assault, a plaintiff must sufficiently show (1) the defendant intended to cause a harmful or offensive contact with the person of another and (2) that other person is thereby put in such imminent apprehension. *W. Va. Fire & Case. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004). However, "[a]n activity that would otherwise subject a person to liability in tort for assault and battery . . . does not constitute tortious conduct if the actor is privileged to engage in such conduct." *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010) (citing *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir.1988)). "A privilege may be based upon . . . the fact that its exercise is necessary for the protection of some interest . . . of the public which is of such importance as to justify the harm caused or threatened by its exercise." *Harper*, 2015 WL 6509131, at *19 (quoting Restatement (Second) of Torts § 10 (Am. Law Inst. 1965))).

Here, it is clear that Defendant Allen used force on Miller when he placed him in the restraint chair. However, Defendant Allen asserts that he cannot be liable for assault and battery because he restrained Miller in good faith to protect him from self-harm. (ECF No. 97 at 16.) Miller, however, disputes that Defendant Allen acted in good faith and instead argues that Defendant Allen restrained Miller maliciously as a form of punishment while Miller was fully compliant. (*See* ECF No. 109 at 16.) Therefore, this Court **FINDS** that there are genuine issues

of material fact as to whether the placing of Miller in the restraint chair was excessive and unnecessary, which bears on whether Defendant Allen's conduct was privileged. *See Harper*, 2015 WL 6509131, at *19 ("[T]here are genuine issues of material fact as to whether this force was excessive, unnecessary, and unreasonable. If [defendant's] . . . use of force was excessive, then his conduct in touching Plaintiff was undoubtedly offensive and may preclude a finding of privilege as to Plaintiff's battery claim."). Thus, this claim is more properly left for a jury to decide. Accordingly, the Court **DENIES IN PART** Defendant Allen's motion for summary judgment insofar as it requests judgment as a matter of law on Miller's assault and battery claim.

b. *Intentional Infliction of Emotional Distress Claim*

To prevail on an intentional infliction of emotional distress ("IIED") claim under West Virginia law, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998). In analyzing the first factor, a Court can "consider whether the extreme and outrageous character of the conduct arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests." *Id.* at 426. This Court has held that force applied "maliciously and sadistically" might also be fairly characterized as "atrocious and intolerable." *See Harper*, 2015 WL 6509131, at *5.

Here, Miller alleges that Defendant Allen intentionally or recklessly caused him emotional

distress by confining him to the restraint chair for ten hours without just cause. (*See* ECF No. 78 at ¶ 155.) Miller further alleges that Defendant Allen knew that placing Miller in the restraint chair would cause Miller to suffer severe emotional and mental distress. (*Id.* at ¶ 161.) The parties dispute as to why Defendant Allen placed Miller in the restraint chair. This dispute which hinges on whether Defendant Allen's placing of Miller in the chair can be said to be extreme and outrageous and whether Defendant Allen acted with intent or recklessly when it was certain to cause Miller distress. Therefore, this Court **FINDS** that there are genuine issues of material fact as to Miller's IIED claim. Thus, this claim is more properly left for a jury to decide. Accordingly, the Court **DENIES IN PART** Defendant Allen's motion for summary judgment insofar as it requests judgment as matter of law on Miller's IIED claim.

c. *False Imprisonment Claim*

False imprisonment is the "illegal detention of a person without lawful process or by an unlawful execution of process." *McLaurin v. Rubenstein*, No. 2:11-cv-00090, 2012 WL 96707, at *19 (quoting *Riffe v. Armstrong*, 477 S.E.2d 535, 549 (W. Va. 1996)). To prevail on a false imprisonment claim, a plaintiff must show "(1) the detention of the person, and (2) the unlawfulness of the detention and restraint." *Earle v. City of Huntington*, No. 3:14-cv-29536, 2017 WL 2960542, at *7 (quoting *Riffe*, 477 S.E.2d at 552).

Here, Miller alleges that Defendant Allen unlawfully detained him in the restraint chair. (*See* ECF No. 78 at ¶ 169–71.) While it is clear that Miller was detained in the restraint chair, it is unclear whether Miller's detention was unlawful. Defendant Allen asserts that Miller was held in the restraint chair to protect Miller from self-harm in accordance with WVDOC policy. (ECF No. 97 at 16.) Miller, however, asserts that Defendant Allen placed him in the restraint chair as

retaliation for Miller continually requesting medical attention. (ECF No. 109 at 16.) Because this factual dispute goes to the legality of Miller's confinement in the restraint chair, the Court **FINDS** there are genuine issues of material fact precluding summary judgment. As such, Miller's false imprisonment claim is more properly left for a jury to decide. Accordingly, this Court **DENIES IN PART** Defendant Allen's motion for summary judgment insofar as it requests judgment as a matter of law on Miller's false imprisonment claim.

d. *Negligence Claim*

To prevail on a negligence claim, a plaintiff must show that "(1) he was owed a duty of care; (2) the duty was breached; (3) the breach was the cause of an injury; and (4) he suffered damages." *Carroll v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 3:14-cv-17012, 2015 WL 1395886, at *4 (S.D. W. Va. Sept. 28, 2015) (citing *Browning v. Halle*, 632 S.E.2d 29, 32 (W. Va. 2005)).

Here, it is clear that Defendant Allen had a duty to Miller. *See id.* ("[D]efendant 'who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection' is under a duty to protect the other 'against unreasonable risk of physical harm.'" (quoting *Miller v. Whitworth*, 455 S.E.2d 821, 825 (W. Va. 1995))). However, the factual dispute as to why Miller was placed in the restraint chair bears on whether Defendant Allen breached his duty to Miller. Therefore, this Court **FINDS** that there are genuine issues of material fact as to Miller's negligence claims. Accordingly, the Court **DENIES IN PART** Defendant Allen's motion for summary judgment insofar as it requests judgment as a matter of law as to Miller's negligence claim.

In sum, because the Court **FINDS** there are genuine issues of material fact with regards to

each of Miller's state claims, these claims are more properly left for a jury to decide. Accordingly, this Court **DENIES IN PART** Defendant Allen's motion for summary judgment insofar as it requests summary judgment on Miller's state law claims.

### 4. Qualified Immunity

Lastly, in his motion for summary judgment, Defendant Allen argues that he is entitled to qualified immunity for all of Miller's claims. (ECF No. 97 at 17–19.) Specifically, Defendant Allen argues that that he did not violate any clearly established right because his decision to place Miller in the restraint chair was discretionary. (*Id.* at 18; ECF No. 111 at 10.) Miller, however, argues that Defendant Allen is not entitled to qualified immunity because there is an issue of material fact regarding qualified immunity, specifically whether Defendant Allen's decision to place Miller in the restraint chair was done in a good faith attempt to protect Miller from harming himself or done maliciously and sadistically in retaliation for Miller requesting medical attention. (*See* ECF No. 109 at 18–19.)

The standard for assessing claims of qualified immunity are stated above. *See* discussion *supra* Section III.A.4. Here, as addressed more fully above, the evidence, taken in the light most favorable to Miller, leaves genuine issues of material fact concerning whether Defendant Allen's placing of Miller in the restraint chair for allegedly ten hours constituted excessive force under the Eighth Amendment. Furthermore, as discussed above, there are issues of material fact regarding Miller's state law claims. Thus, this Court cannot find qualified immunity as a matter of law for Miller's state law claims. Accordingly, this Court **DENIES IN PART** Defendant Allen's motion for summary judgement insofar as it asserts that Defendant Allen is entitled to qualified immunity as a matter of law for all of Miller's claims against him.

*IV.     CONCLUSION*

For reasons more fully discussed above, the Court **GRANTS IN PART** all three Defendants' motion for summary judgment insofar as they request dismissal of Miller's claims regarding Defendant Wynegar's alleged use of zip-ties and racial slurs and Defendant Allen's alleged threatening and assault of Miller.    (ECF No. 90; ECF No. 92; ECF No. 96.)    The Court further **DENIES IN PART** Defendants Rubenstein's and Ballard's motion insofar as it requests judgment as a matter of law on Defendant's Eighth Amendment and supervisory liability claims, qualified immunity as to all of Miller's claims, and a dismissal as to Miller's claim for injunctive relief, (ECF No. 90); **DENIES IN PART** Defendant Wynegar's motion insofar as it asserts that Miller could not use his deposition to rebut summary judgment, (ECF No. 92); and **DENIES IN PART** Defendant Allen's motion insofar as it requests judgment as a matter of law on Miller's Eighth Amendment and state law claims and asserts qualified immunity as to all of Miller's claims. (ECF No. 96.)    Accordingly, the claims against all three Defendants shall proceed only insofar as they relate to Miller's exhausted claims.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 6, 2018

THOMAS E. JOHNSTON, CHIEF JUDGE